JON E. MAKI, CAL. BAR NO. 199958
  Law Office of Jon E. Maki
  4135 Calle Isabelino
  San Diego, CA 92130
Telephone:   (858) 876-2580
Facsimile:   (858) 876-1915
Email:  jonmaki.esq@gmail.com


Attorneys for Plaintiffs
Imagine That International, Inc. dba
All Four Paws

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGINE THAT INTERNATIONAL, INC., a California corporation dba ALL FOUR PAWS,<br><br>               Plaintiff,<br><br>     v.<br><br>CS TECH US. a Nevada corporation dba ZenPet and ZenPetUSA.com, CS TECH MEXICO, S.A. de C.V., a foreign corporation, CHAD GIBSON, an individual, JEN BARRELLI, an individual, HECTOR D. CAMPA, an individual, and DOES 1-10, inclusive,<br><br>               Defendants. | CASE NO.  **'15CV1558 GPC KSC**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**REQUEST FOR JURY TRIAL** |

# I.

## JURISDICTION AND VENUE

1.     This action arises under the Patent Laws of the United States, Title 35, United States Code, California Business & Professions Code §§ 17200 and 17500, and under the common law of the United States.  This Court has original and exclusive jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The matter in controversy complained of herein exceeds the sum or value $75,000.

2.     This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because, as alleged below, Defendants reside or maintain businesses in this judicial district and/or have intentionally engaged in substantial business within this forum, amounting to sufficient minimum contacts, including but not limited to, the offering and selling their infringing products in this judicial district, the harm caused to Plaintiffs by Defendants' acts and omissions was targeted at Plaintiffs and designed to impact Plaintiffs in this judicial district, and a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district.

# II.

## PARTY ALLEGATIONS

3.     Plaintiff IMAGINE THAT INTERNATIONAL, INC. is a corporation duly organized and existing under the laws of the State of California, does business as "All Four Paws" ("All Four Paws") and has its principal place of business at 126 Hart Avenue, Santa Monica, CA 90405.

4.      On information and belief, defendant CS TECH US ("CS Tech US") is a Nevada corporation which also does business as ZenPet and ZenPetUSA.com and has its principal place of business located at 3606 Seaview Way, Carlsbad, CA 92008.  On information and belief, defendant CS Tech US has also done business as ZenPet at 3138 Roosevelt Street Suite J, Carlsbad, CA 92008 and on the Internet at zenpetproducts.com and zenpet.gromspotusa.com.

5.      On information and belief, defendant CS TECH MEXICO, S.A. de C.V. ("CS Tech Mexico") is a foreign corporation having its principal place of business located at Calle 1 Oriente 19045 Tijuana, Baja California, Mexico, 22444.

6.      On information and belief, defendant CHAD GIBSON ("Gibson") is an individual residing at 3542 Simsbury Court, Carlsbad, CA 92010.

7.      On information and belief, defendant JEN BARRELLI ("Barrelli") is an individual residing at 3495 Pontiac Drive, Carlsbad, CA 92010.

8.      On information and belief, defendant HECTOR D. CAMPA ("Campa") is an individual maintaining a business or mailing address at 2364 Paseo De Las Americas, #1011011, San Diego, CA 92154.  Defendant Campa's residential address is unknown at this time.

9.      The defendants referenced in Paragraphs 4-8 are sometimes hereinafter referred to collectively as "Defendants."

10.      Plaintiff does not know the true names and capacities, whether individuals, corporations, companies, partnerships, joint ventures, or otherwise of defendant DOES 1-10, inclusive.  Plaintiff is informed and believes, and on that

-2-

basis alleges, that each fictitious defendant was in some way responsible for, participated in, or contributed to the matters and things of which Plaintiff complains, and in some fashion, has legal responsibility.  When the exact nature and identity of such fictitious defendants or defendants' responsibility for participation and contribution to the matters and things alleged in this Complaint is ascertained, Plaintiff will seek leave to amend this Complaint.

## III.
## GENERAL ALLEGATIONS

11.     The allegations of paragraphs 1-10 above are hereby re-alleged and incorporated herein by reference.

12.     Based in Southern California, All Four Paws is a family run business and an innovator in the field of pet safety and convenience products.  All Four Paws has found a great of success with its patented Comfy Cone® product, an Elizabethan collar medical protective device for animals, among other innovations.

13.     Since its introduction into the marketplace, the Comfy Cone® has been a hit, both in the U.S. and internationally, having won numerous accolades and recommendations, notably:

- • Blue Ribbon for Best New Product SuperZoo in 2007 and 2008
- • Blue Ribbon for Best New Product Global Pet Expo in 2008
- • Silver Medal for best Product H.H. Backers Associates in 2009
- • Animal Planet highly recommends Comfy Cone and uses the Comfy Cone in their "New Parent" DVD that comes with a pet adoption.

14.     Through its program called All Four Paws With Love, Plaintiff donates the Comfy Cone® to various charitable organizations across the U.S., to support all the wonderful animal shelters and rescue foundations that care for the myriad dogs and cats that have yet to find loving homes.  All Four Paws has donated thousands of Comfy Cones® to the various non-profit organizations, notably, Animal Planet; Best Friends Animal Society – Kanab, Utah; World Heart Organization – Acton, California; Much Love Animal Rescue – Los Angeles, California; Humane Society, Calumet Area; Wright–Way Rescue – Niles, Illinois; Save a Yorkie Foundation – Sinking Spring, Pennsylvania; Dogs for Diabetics - Concord, California; Bichon Fur Kids – Oceanside, California; and TCVESSA Foundation – Elk River, Minnesota.  All Four Paws With Love also teams up with a large number of celebrities, politicians and sports figures who are attached to animal charities by working to raise money for animal charities, by offering autographed Comfy Cones® for use in silent auctions and fundraisers.

15.     All Four Paws is the owner of United States Patent No. 8,042,494 entitled "Pet Protective Collar" which was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on October 25, 2011 (the "'494 patent"), United States Patent No. 8,720,386 entitled "Pet Protective Collar with Stays" which was duly and lawfully issued by USPTO on May 13, 2014 (the "'386 patent"), and United States Patent No. D705,502 entitled "Pet Protective Collar," which was duly and lawfully issued by USPTO on May 20, 2014 (the "D'502 patent") (sometimes together "the patents-in-suit").

16.     A true and correct copy of the 'D'502 patent is attached as Exhibit 1.  By statute, the D'502 patent is presumed valid and enforceable under 35 U.S.C. §282.  All Four Paws marks the Comfy Cone® with the D'502 patent in accordance with 35 U.S.C. 287(a).

17.     A true and correct copy of the '386 patent is attached as Exhibit 2.  By statute, the '386 patent is presumed valid and enforceable under 35 U.S.C. §282.  All Four Paws marks the Comfy Cone® with the '386 patent in accordance with 35 U.S.C. 287(a).

18.     A true and correct copy of the '494 patent is attached as Exhibit 3.  By statute, the '494 patent is presumed valid and enforceable under 35 U.S.C. §282.  All Four Paws marks the Comfy Cone® with the '494 patent in accordance with 35 U.S.C. 287(a).

***Factual Background Related to Prior Litigation***

19.     On information and belief, Defendants Gibson and Barrelli along with Mr. Curt Gibson owned, ran, were employed by, or were otherwise affiliated with a California corporation called G&B Marketing, Inc. ("G&B").  On information and belief, G&B was the original maker of the ProCone, a competitor to the Comfy Cone® in the soft e-collar market.

20.     On information and belief, on or about June 29, 2011, Contech Enterprises, Inc. ("Contech") (a foreign corporation based in Victoria, British Columbia, Canada) acquired G&B.  On information and belief, defendants Gibson and Barrelli and Mr. Curt Gibson became employees of Contech following the acquisition.

21.     On or about May 11, 2012, All Four Paws sued Contech in the Southern District of California for patent infringement, unfair competition, trade libel, and intentional interference with contractual relations (Case No. 12CV1153

-5-

before then Chief Judge Irma E. Gonzalez (retired) and Magistrate Judge William V. Gallo) (the "Contech lawsuit").

22.    In addition to the patent infringement claim, All Four Paws alleged that defendant Gibson, defendant Barrelli and/or Mr. Curt Gibson had falsely claimed that Comfy Cone® was dangerous to animals because it was prone to bacteria growth and infestation.  That claim was false and was officially retracted and renounced as a part of settlement detailed below.

23.    Imagine That also accused Contech of interfering with All Four Paws' contractual relationship with Petco Animal Supplies, Inc. ("Petco") and copying the text of All Four Paws' online product page at Petco.com verbatim for Contech's competing product the ProCone on Petco.com.

24.    The parties to the Contech lawsuit conducted an Early Neutral Evaluation (ENE) with Judge Gallo on or about February 25, 2013.  On information and belief, Mr. Curt Gibson was Contech's representative with settlement authority at the ENE.

25.    At the ENE, the parties to the Contech lawsuit reached the terms of an agreement to resolve the Contech lawsuit.  Mr. Curt Gibson took part in the negotiation of the proposed settlement on behalf of Contech and agreed to its terms on the record before Judge Gallo.

26.    Later, All Four Paws and Contech entered into a settlement agreement and license (the "Contech License") and the Contech lawsuit was dismissed with prejudice.  The Contech License covered not only the '494 patent but also pending patent applications that led to the D'502 and '386 patents.  On

-6-

information and belief, Contech employees defendant Gibson and Barrelli along with Mr. Curt Gibson were aware of the license and the patents covered.

27.     The parties to the Contech lawsuit agreed upon a public statement/press release that could be disseminated.  The press release read as follows:

> The maker of the Comfy Cone® e-collar, Imagine That International, Inc. ("Imagine That") which does business as All Four Paws, and Contech Enterprises, Inc. ("Contech"), the maker of the ProCone™ e-collar, announce that have reached a mutually agreeable settlement to resolve litigation between the parties filed on May 11, 2012 and titled *Imagine That International, Inc. v. Contech Enterprises, Inc. et al.* Case No. 3:12-cv-01153-IEG-WVG in the United States District Court for the Southern District of California (the "Lawsuit"). The Lawsuit contained claims by Imagine That for patent infringement, intentional interference with contractual relations, trade libel, and unfair competition. The Lawsuit contained counterclaims by Contech for patent invalidity and non-infringement. The terms of the settlement are confidential except Contech took a patent license from Imagine That for its ProCone™ e-collar.

> In the past, Contech made certain statements regarding the Comfy Cone® being dangerous or hazardous to animals. Contech has no evidence that the Comfy Cone® causes bacterial infections, lacks breathability, or causes moisture build up that could be dangerous to an animal. Any such claims made by or attributed to Contech are officially retracted and renounced.

-7-

28.     Contech paid royalties to All Four Paws under the Contech License agreement from June 2013 until about March 2014 for sales of its ProCone e-collar.

29.     During that time, All Four Paws had serious concerns that the amount of royalties being paid by Contech was too low and had taken steps to initiate an audit to commence in the 4th Quarter of 2014.

30.     At least as early as the 4th Quarter of 2014, Contech also changed the design of the ProCone to incorporate different stays than were used in the ProCone accused of infringement in 2012-2013.  Contech changed the nature of the stays used in the ProCone to make them flat and more rigid, sewn into channels, almost exactly like the Comfy Cone®.  All Four Paws only realized that the stays design had been changed when a ProCone with the new design was inadvertently and erroneously returned to All Four Paws by Amazon.com.

31.     Also in or around the 4th Quarter of 2014, Contech changed the colors in which the ProCone was offered to one prohibited the Contech License. Contech began producing the ProCone in what appears to be black color, especially on websites and other advertisements such as the one embedded below, in violation of the Contech License and almost exactly like the Comfy Cone®:



COMPLAINT

32.    On information and belief, both the color change and stays change were designed to make the ProCone look and function more like the Comfy Cone®, trading on the Comfy Cone's consumer goodwill and make the new ProCone look confusingly similar to consumers.

33.    On information and belief, Contech's changes to the stays and the ProCone color designed to deceive customers that the ProCone came from the same source or origin (Imagine That) and was of the same quality as the Comfy Cone®.

34.    All Four Paws believed that both the change to the stays and the ProCone color change violated terms of the Contech License.

35.    All Four Paws contacted Contech in writing and by phone regarding these violations late in 2014, and All Four Paws was planning to take legal action for breach of the license agreement unless Contech changed the new stays and color.

36.    All Four Paws was also proceeding with its audit of Contech's royalty payments in late 2014 when it learned that Contech had lodged a Proposal under Canada's Bankruptcy and Insolvency Act (BIA) (the "Contech Proposal") on December 23, 2014.  Due to regular mail service by the Trustee, All Four Paws did not receive notice of the Contech Proposal until early January 2015.

37.    The Contech Proposal precluded All Four Paws from suing Contech for breach of the Contech License due to the automatic stay under the BIA of any litigation while Contech was in bankruptcy.

38.     The Contech Proposal also frustrated the purpose of All Four Paws' audit of Contech's royalty payments because as an unsecured creditor, All Four Paws was now unlikely to receive the full royalty due regardless of what the audit uncovered.

***Factual Background Related to the Contech Bankruptcy***

39.     Deloitte Restructuring Inc. ("Deloitte") was named the Trustee of the Contech Proposal.  All documents related to the Contech Proposal and subsequent bankruptcy can be found at http://www.insolvencies.deloitte.ca/en-ca/Pages/Contech.aspx.

40.     The original Contech Proposal purported that All Four Paws was owed greater than $12,000 in royalty payments.  All Four Paws disputes the accuracy of that amount.

41.     As an Unsecured Creditor under the original Contech Proposal, All Four Paws would be offered thirty cents ($0.30) for every dollar of its Proven Claim.

42.     All Four Paws voted against the Contech Proposal but the Contech Proposal was accepted by a majority of secured and unsecured creditors voting.  Deloitte moved for an Order approving the Contech Proposal.

43.     One purported secured creditor, VegHerb LLC ("VegHerb"), who had an intellectual property agreement with Contech, moved the Court for an order stating that its interest was unsecured and that the patent rights should revert.

44.     The lower court approved the Contech Proposal despite VegHerb's application.  VegHerb appealed.

45.     The appellate court agreed with VegHerb and set aside the lower court judge's approval of the Proposal.  As a result, Contech was deemed assigned into bankruptcy on March 6, 2015.

46.     Deloitte was appointed Receiver of Contech by the Court on March 20, 2015.  The "Receivership Order" is attached hereto as Exhibit 4.

47.     On or about April 17, 2015, Scotts Canada, Ltd. bought a substantial portion of Contech's assets but no assets related to Contech's pet products were involved.

48.     Meanwhile, All Four Paws remained in limbo. The Receiver later revised the amount All Four Paws was owed in royalty payments to greater than $13,000, which All Four Paws continues to dispute.

49.     The Receivership Order precluded All Four Paws from suing Contech for breach of the Contech License without written permission from Deloitte (which Deloitte was unable or unwilling to give) or a Court order from the bankruptcy Court (which was not cost effective for All Four Paws to seek) or immediately terminating the Contech License.  As such, Deloitte was allowed to sell off ProCone existing inventory for the benefit of the bankruptcy estate.

50.     Nevertheless, All Four Paws had taken steps to initiate termination of the Contech License and the Contech License is now terminated. The final resolution of the Contech bankruptcy is expected this month.

-11-

51.    Counsel for All Four Paws was in frequent contact with Deloitte regarding the sales of ProCones by Deloitte on behalf of the Contech bankruptcy estate.  Deloitte representatives had stated that no new ProCones were being made in Mexico or shipped to the United States.  Only remaining inventory from the Grand Rapids, Michigan location (known as Contech USA) was being sold according to Deloitte representatives.  Furthermore, the Vista location (previously G&B's location and a satellite sales office for Contech) had been closed as a part of the receivership plan and process.

52.    Finally, the Deloitte representatives stated the plant in Mexico where the ProCones were made was holding onto some remaining inventory in a bid to get paid the full amount it was owed.

53.    All Four Paws was mindful of the possibility that the Mexican manufacturer might sell and/or separate a third party might try to buy the inventory and attempt to sell the unlicensed ProCones in the US or abroad and began watching ProCone inventory carefully online and in brick and mortar stores such as Petco.

54.    All Four Paws notified Petco of the Contech bankruptcy proceedings and that no entities other than Contech were licensed to sell the ProCones.  All Four Paws also let Petco know that it would be ready, willing and able to put Comfy Cones® back in Petco stores if/when the ProCone became unavailable.

55.    The Comfy Cone® had previously been in Petco brick and mortar stores before being replaced by the ProCone.  The Contech lawsuit addressed G&B and/or Contech's unlawful conduct related to Petco's decision to

remove the Comfy Cone® in favor of the ProCone.  Specifically, All Four Paws accused G&B/Contech representatives of making false statements to Petco regarding about the quality, patentability and pricing of the Comfy Cone®.  On information and belief, defendant Gibson, or Mr. Curt Gibson, was the G&B/Contech representative who made the statements to Petco.  As a result, the Comfy Cone® was relegated to online sales only.

56.     Beginning in or about mid-May 2015, counsel for All Four Paws spoke on several occasions with Deloitte representatives handling the Contech receivership.  The Deloitte representative indicated that two large Canadian pet products companies had expressed interest in buying certain Contech pet product assets but that no offers had been made.

57.     Counsel for All Four Paws specifically asked the Deloitte representative whether any interest was expressed by defendant Gibson, Mr. Curt Gibson, defendant Barrelli, or anyone associated with G&B.  At that time in mid to late-May, the Deloitte representative stated that no one associated with G&B had expressed any interest in the Contech pet product assets and that those former employees with G&B ties were no longer working for Contech under the Deloitte Receivership.

58.     Counsel for All Four Paws asked the Deloitte representatives to please let him know if any progress was made or changes occurred related to any potential buyers of the Contech pet product assets.  Further, counsel for All Four Paws made clear to the Deloitte representatives that the license between All Four Paws and Contech was not assignable or transferrable and that, as to the ProCone, any buyer of Contech's pet product assets would potentially be subject suit for infringement just as Contech had been previously.

-13-

1            59.    In or about May and early June, stock of the ProCone was

2    dwindling by All Four Paws' observations.  Many online retailers listed the

3    ProCone as out of stock in multiple sizes.  Similarly, Petco brick and mortar stores

4    had fewer and fewer ProCones available and several sizes were out of stock.  All

5    Four Paws' observations fit with what it expected as the Contech bankruptcy

6    progressed.

7

8            60.    However, in mid to late-June, All Four Paws noticed a

9    surprising uptick in ProCone inventory.  Some online retailers who had been out of

10   ProCone stock had suddenly re-stocked the items.  Petco locations seemed to have

11   more ProCones on the racks and All Four Paws noticed a new, pale green color

12   ProCone being sold at Petco.

13

14           61.    Counsel for All Four Paws reached out to the Deloitte

15   representative to ask whether there was any change in the status of the interest in

16   Contech pet product assets but the called was not immediately returned.

17

18           62.    All Four Paws became more and more concerned that this was

19   no longer remaining inventory from bankrupt Contech but new inventory from

20   another source.

21

22           63.    On July 10, 2015, counsel for All Four Paws reached the

23   Deloitte representative by phone.  The Deloitte representative indicated that he had

24   left a voicemail message regarding the sale of certain Contech pet product-related

25   assets.  But counsel for All Four Paws has no record any such phone call or

26   message.

27

28

64. The Deloitte representative informed counsel for All Four Paws that the two large Canadian pet companies had dropped out of the running for the Contech pet product-related assets and that a new group consisting of defendant Gibson and other person(s) or entities had made an offer as "CS Tech US." The offer was accepted and resulted in the sale of the trade marks for "ProCone" and "ProCollar" (another pet product sold by Contech) as well as some "unsaleable inventory" from the Grand Rapids, Michigan Contech USA location. The Deloitte representative said that no "saleable inventory" was available or sold. The Deloitte representative also said that the ZenPet name was not available for sale because Contech had licensed it from a third party but did not own it.

***Factual Background Related to Formation of CS Tech US and Defendants' Sale of ProCones and ZenCones in the US***

65. On information and belief, defendant CS Tech US was registered with the state of Nevada as a corporation on or about March 16, 2015.

66. On information and belief, defendants Gibson, Barrelli and Campa are officers and/or directors of CS Tech US. Specifically, on information and belief, defendant Gibson is the President and Treasurer of CS Tech US and also a director. On information and belief, defendant Barrelli is the Secretary of CS Tech US and also a director. On information and belief, defendant Campa is a director CS Tech US. Attached as Exhibit 5 is a print out from the Nevada Secretary of State's website regarding CS Tech US.

67. On information and belief, defendant Campa is also the President and CEO of Defendant CS Tech Mexico.

-15-

68.     On information and belief, defendant CS Tech Mexico is the Mexican manufacturer of the ProCone referenced in Paragraphs 52-52 as holding onto stock of ProCones made for Contech.

69.     On information and belief, defendant CS Tech Mexico was owed approximately $131,818 by Contech.  Attached as Exhibit 6 is a copy of the Notice of Receiver's Statement from Deloitte dated March 19, 2015 indicating CS Tech Mexico as a Contech creditor in the amount of $131,818.

70.     On information and belief, defendants CS Tech US, Gibson, and Barrelli struck a deal with defendants CS Tech Mexico and Campa to export/import and deliver the ProCone/ZenCone inventory for sale by Defendants.

71.     On information and belief, at least as early as March 16, 2015, Defendants began exporting/importing ProCones into the United States.

72.     On information and belief, at least as early as March 16, 2015, Defendants began offering for sale and selling the ProCone/ZenCone in the United States and abroad.

73.     On information and belief, Defendants do business on the Internet through ZenPetUSA.com, zenpetproducts.com and zenpet.gromspotusa.com.

74.     On information and belief, Defendants are offering the ProCone directly for sale on its website ZenPetUSA.com as seen in the embedded screen capture from the ZenPetUSA.com website:



75.     On information and belief, Defendants are offering the ProCone directly for sale on the website zenpet.gromspotusa.com which provides a portal for consumers to order the ProCone directly from Defendants.

76.     In an effort to deceive customers as to source of the product, on information and belief Defendants advertise the ProCone's source as Contech on the zenpet.gromspotusa.com website as shown in the bottom portion of the webpage screen captures embedded below:

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20      77.     On information and belief, Defendants are offering ProCones

21  for sale in retail stores including Petco and numerous online retailer websites as

22  well.  Examples of the ProCone offered for sale online listing CS Tech US as the

23  origin are attached as Exhibit 7.

24

25      78.     On information and belief, Defendants are using the images of

26  the Contech ProCone on many of the online retailer websites in Exhibit 7.  On

27  information and belief, Defendants are also using the same images of animals

28  wearing the ProCone that Contech has used for years.

79.     On information and belief, Defendants are offering ProCones for sale in retail stores including Petco under the company name ZenPet.

80.     On information and belief, the name ZenPet was licensed by Contech from a third party and was not purchased by Defendants from Contech.

81.     On information and belief, Defendants have not licensed the name ZenPet from the third party whom Contech had licensed it.

82.     On information and belief, Defendants are not entitled to use the name ZenPet without the license that Contech had secured to use the name.

83.     On information and belief, the ProCones now being sold by Defendants are identical to, or substantially the same as the ProCones sold by Contech after the stays were changed.

84.     On information and belief, the ProCones now being sold by Defendants are produced at the same manufacturing plant in Mexico as the ProCones sold by Contech.

85.     On information and belief, the ProCones being sold by Defendants were originally sold with product hang tags (a cardboard label that is placed over the cone in retail locations) bearing the name ProCone, such as in the example embedded below:

COMPLAINT

1
2
3
4
5
6
7
8



9        86.    On information and belief, Defendants began selling products

10 labeled as ProCones (on the cone itself) under the new name ZenCone (on the

11 hangtag) as see in the examples embedded below:

12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28



-20-

87.    However, the ProCones being sold with ZenCone hang tags are sold by CS Tech US as demonstrated by the source of origin on the hang tag embedded below:



88.    On information and belief, Defendants have filed for a federal trademark registration on the mark ZENCONE.  Attached as Exhibit 8 is a pending trademark registration application stating that CS Tech US located at 3606 Seaview Way Carlsbad California 92008 is the applicant.

89.    On information and belief, Defendant CS Tech US is also now selling cones labeled (on the cone itself as well as the hang tag) ZenCone as seen in the three images embedded below:

COMPLAINT







COMPLAINT

90.     On information and belief, the ZenCones being sold by Defendants are identical to, or substantially the same as the ProCones sold by Contech after the stays were changed was made except the ZenCone printing is now being placed on the cones themselves.

91.     On information and belief, the ZenCones being sold by Defendants are produced at the same manufacturing plant in Mexico as the ProCones sold by Contech.

92.     On information and belief, Defendants' sales and offers for sale of the cones made for Contech under the ZenPet trade name is being done by Defendants to deceive distributors, wholesalers, retailers, consumers and All Four Paws as to the origin of the goods.

93.     On information and belief, Defendants have deceived consumers, wholesalers, and retailers that the ProCones.  Defendants did deceive All Four Paws that the products labeled as ProCones were being sold by Contech (or by Deloitte as the Receiver for the Contech bankruptcy) when in fact they were being sold by Defendants.

94.     On information and belief, Defendants were selling ProCones and/or ZenCones at least as early as March 16, 2015.

95.     On information and belief, Defendants did not inform Deloitte that they intended to sell ProCones as CS Tech US or other new entity unauthorized to sell ProCones under the Contech License.

-23-

96.     On information and belief, Defendants informed Deloitte that they were purchasing the ProCone and ProCollar trademarks so that no one else could use them.

97.     On information and belief, Defendants did not inform Petco and other brick and mortar or online retailers that they are not authorized to sell ProCones manufactured for Contech.

98.     On information and belief, Defendants did not inform Petco and other brick and mortar or online retailers that they are not authorized to sell ProCones or ZenCones under the Contech License.

99.     On information and belief, Defendants did not inform Petco and other brick and mortar or online retailers that they were not authorized to sell ProCones under the name ZenPet which Contech had previously licensed.

100.    On information and belief, Defendants knew of All Four Paws' patent rights under the D'502 patent.

101.    On information and belief, Defendants knew of All Four Paws' patent rights under the '386 patent.

102.    On information and belief, Defendants knew of All Four Paws' patent rights under the '494 patent.

103.    On information and belief, Defendants knew or should have known that they were infringing the patents-in-suit by making, using, offering for sale and selling the ProCones and later ZenCones.

-24-

104.   On information and belief, Defendants' pattern and practice of deceitful conduct was designed to unfairly compete with All Four Paws using unauthorized names licensed to Contech.

105.   On information and belief, Defendants intentionally and unfairly inserted themselves into a stream of commerce that previously originated lawfully with Contech in manner that was designed to and succeeded in deceiving Deloitte, the patentee, All Four Paws, distributors, wholesalers and retailers selling the unauthorized and infringing products and ultimately the consumers who purchased them.

106.   On information and belief, Defendants did so in a manner that was designed to trade on what third parties perceived as an authorized, licensed Contech product, even though it was being sold without All Four Paws' permission by Defendants.

107.   On information and belief, Defendants did so in order to avoid disrupting the business and supply chain relationship with distributors, wholesalers and retailers such as Petco and online sellers such as Amazon.com.

108.   On information and belief, Defendants plan to continue the deception at one of the largest retail pet trade show in North America, if not the world, SuperZoo in Las Vegas, NV on July 21-23, 2015.  A copy of ZenPet's SuperZoo Exhibitor Registration bearing the same 3606 Seaview Way, Carsbad (sic), CA 92008 address is attached as Exhibit 9.

109.   As one of the largest retail pet trade shows, SuperZoo draws buyers for retail stores from all over the globe.  SuperZoo provides pet product

vendors the opportunity to meet new customers and solidify and expand relationships with existing customers.

110.   Many international buyers attend SuperZoo and many only make it to the United States for one trade show a year – typically SuperZoo or Global Pet Expo.

111.   On information and belief, individual defendants Gibson and Barrelli attended the NAVC (North American Veterinary Community) Conference in Orlando, Florida from January 17-21, 2015.

112.   On information and belief, individual defendants Gibson and Barrelli registered for the NAVC Conference as "ZENPET," 3138 Roosevelt Street (sic) J, Carlsbad, CA.  Attached as Exhibit 10 is a copy of the ZENPET registration for the NAVC Conference.

113.   On information and belief, individual defendants Gibson and Barrelli attended Global Pet Expo, the pet industry's largest annual trade show, presented by the American Pet Products Association (APPA) and Pet Industry Distributors Association (PIDA) from March 4-6, 2015.

114.   On information and belief, defendants Gibson and Barrelli attended as "Zen Pet Products" but registered Contech as the company.  Attached as Exhibit 11 is a copy of the Global Pet Expo exhibitor detail showing Zen Pet Products registered with Contech's address, phone number and with the domain URL www.zenpetproducts.com.

115.   On information and belief, defendants Gibson and Barrelli but registered Contech as the company for Global Pet Expo because CS Tech US was not yet formed.

116.   On information and belief, Defendants Gibson and Barrelli were no longer employees of Contech when they attended the Global Pet Expo as "Zen Pet Products" but passed themselves off as Contech employees.

117.   On information and belief, www.zenpetproducts.com re-directs users and consumers to zenpetsusa.com.

118.   On information and belief, zenpetsusa.com is a domain owned, controlled and/or operated by Defendants.

119.   On information and belief, www.zenpetproducts.com is a domain owned, controlled and/or operated by Defendants.

120.   On information and belief, zenpet.gromspotusa.com is a domain owned, controlled and/or operated by Defendants.

121.   On information and belief, Contech began using the ZenPet trade name at least as early as July 2013.  Attached as Exhibit 12 is a copy of an abandoned U.S. trademark application by Contech for ZENPET filed on July 5, 2013.  The attorney of record is Sandy Lipkin, who is also the attorney of record for Defendant CS Tech US's trademark application for ZenCone (see Exhibit 6).

122.   The ZENPET trademark application by Contech was abandoned on May 5, 2014 according to the USPTO record in Exhibit 12.  However, on

-27-

information and belief, Contech did not ever discontinue use of ZenPet in association with the ProCone.

123.   On information and belief, distributors, wholesalers, retailers and consumers have come to associate the ZenPet name with Contech.

124.   On information and belief, distributors, wholesalers, retailers and consumers have come to know that Contech's ProCone was licensed by All Four Paws.

125.   On information and belief, Defendants have continued to use the name ZenPet associated with Contech to unfairly compete with All Four Paws by trading on the goodwill and the former licensed status of Contech/ZenPet in an effort to deceive the distributors, wholesalers, retailers, and the consuming public that they are still licensed to sell the ProCone/ZenCone products when they are not.

## **FIRST CLAIM FOR RELIEF**
### **(Infringement of U.S. Patent No. D705,502)**

126.   Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 125 of this Complaint, as set forth above.

127.   Defendants, by and through their agents, employees, and servants, have infringed claim 1 of D'5202 patent by making, having made, manufacturing, having manufactured, importing, using, offering for sale, and/or selling, without Plaintiff's authority, products embodying the claimed ornamental design, including but not limited to Defendants' Pro Cone and/or ZenCone product.

| Claim: 1 – D'502 Patent | ZenCone/ProCone |
|---|---|
|  |  |
|  |  |
| | |
|  |  |
|  |  |

FIG. 7



FIG. 7



FIG. 8



FIG. 8



FIG. 9

FIG. 9

FIG. 9

128.   By reason of Defendants' infringement, Plaintiff has suffered and is suffering damages, including but not limited to, lost sales and impairment of the value of the '494 patent, in an amount yet to be determined.

129.   Upon information and belief, Defendants' acts of infringement are willful, having been committed with notice and knowledge of Plaintiff's patent rights at least as early as May 2014 and committed by Defendants despite an

objectively high likelihood that their actions constituted infringement of a valid patent.

130.   Defendants' acts of infringement are causing irreparable harm to Plaintiff and will continue to cause irreparable harm unless enjoined by this Court.

## SECOND CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,720,386)

131.   Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 130 of this Complaint, as set forth above.

132.   Defendants, by and through their agents, employees, and servants, have infringed at least claim 9 of '386 patent by making, having made, manufacturing, having manufactured, importing, using, offering for sale, and/or selling, without Plaintiff's authority, products embodying the claimed invention(s), including but not limited to Defendants' ProCone and/or ZenCone product.

133.   By reason of Defendants' infringement, Plaintiff has suffered and is suffering damages, including but not limited to, lost sales and impairment of the value of the '386 patent, in an amount yet to be determined.

134.   Upon information and belief, Defendants' acts of infringement are willful, having been committed with notice and knowledge of Plaintiff's patent rights at least as early as May 2014 and committed by Defendants despite an objectively high likelihood that their actions constituted infringement of a valid patent.

135.   Defendants' acts of infringement are causing irreparable harm to Plaintiff and will continue to cause irreparable harm unless enjoined by this Court.

### THIRD CLAIM FOR RELIEF

### (Infringement of U.S. Patent No. 8,042,494)

136.   Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 135 of this Complaint, as set forth above.

137.   Defendants, by and through their agents, employees, and servants, have infringed at least claim 13 of '494 patent by making, having made, manufacturing, having manufactured, importing, using, offering for sale, and/or selling, without Plaintiff's authority, products embodying the claimed invention(s), including but not limited to Defendants' ProCone and/or ZenCone products.

138.   By reason of Defendants' infringement, Plaintiff has suffered and is suffering damages, including but not limited to, lost sales and impairment of the value of the '494 patent, in an amount yet to be determined.

139.   Upon information and belief, Defendants' acts of infringement are willful, having been committed with notice and knowledge of Plaintiff's patent rights at least as early as May 2012 and committed by Defendants despite an objectively high likelihood that their actions constituted infringement of a valid patent.

140.   Defendants' acts of infringement are causing irreparable harm to Plaintiff and will continue to cause irreparable harm unless enjoined by this Court.

-33-

# FOURTH CLAIM FOR RELIEF

## (Unfair Competition)

141.   Plaintiff re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 140 of this Complaint, as set forth above.

142.   Defendants, by and through their agents, employees, and servants, have unfairly competed with Plaintiff, creating a false association by using the name ZenPet rightfully associated with Contech to compete with All Four Paws, misrepresenting and deceptively advertising the origin of Defendants' ProCone and ZenCone products, and unlawfully trading on the goodwill and the former licensed status of Contech/ZenPet in an effort to deceive the distributors, wholesalers, retailers, and the consuming public that they are licensed and authorized to sell the ProCone/ZenCone products when they are not.

143.   By reason of Defendants' actions, Plaintiff has suffered and is suffering damages, including lost sales, market share, asset value, and goodwill, price erosion and the false association of Defendants with All Four Paws in a licensing arrangement that does not exist.

144.   Plaintiff suffered an injury in fact from the loss of money and/or property and the injury was caused by the Defendants' unfair business practices.

145.   Defendants' actions are causing irreparable harm to Plaintiff and will continue to cause irreparable harm unless enjoined by this Court.

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A. A temporary restraining order enjoining Defendants, or at least defendants Gibson, Barrelli, and CS Tech US, from displaying, offering for sale, or selling the ProCone or ZenCone products at the upcoming SuperZoo trade show on July 21-23, 2015 in Las Vegas, Nevada.

B. Judgment that Defendants have infringed U.S Patent No. D705502.

C. An award of damages for infringement of U.S Patent No. D705502 in an amount to be determined at trial.

D. Additional damages for willful infringement of U.S Patent No. D705502 in an amount to be determined at trial.

E. A preliminary and thereafter permanent injunction prohibiting Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from further infringement of U.S Patent No. D705502.

F.

G. Judgment that Defendants have infringed U.S Patent No. 8,720,386.

H. An award of damages for infringement of U.S Patent No. 8,720,386 in an amount to be determined at trial.

I. Additional damages for willful infringement of U.S Patent No. 8,720,386 in an amount to be determined at trial.

J. A preliminary and thereafter permanent injunction prohibiting Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, from further infringement of U.S Patent No. 8,720,386.

COMPLAINT

1  K.  Judgment that Defendants have infringed U.S Patent No.
2  8,042,494.

3  L.  An award of damages for infringement of U.S Patent No.
4  8,042,494 in an amount to be determined at trial.

5  M.  Additional damages for willful infringement of U.S Patent No.
6  8,042,494 in an amount to be determined at trial.

7  N.  A preliminary and thereafter permanent injunction prohibiting
8  Defendants and their officers, agents, servants, employees, and attorneys, and those
9  persons in active concert or participation with them, from further infringement of
10  U.S Patent No. 8,042,494.

11  O.  Judgment that this is an exceptional case under 35 U.S.C. § 285
12  and awarding Plaintiffs' their reasonable attorneys' fees.

13  P.  A preliminary and thereafter permanent injunction prohibiting
14  Defendants and their officers, agents, servants, employees, and attorneys, and those
15  persons in active concert or participation with them, from further unfair competition
16  and trade libel for disparagement of Plaintiff's products.

17  Q.  Costs of suit; and

18  Such other relief as the Court deems just and proper.

19  Dated:  July 14, 2015

22  By  /s Jon E. Maki
23  JON E. MAKI,

24  Attorneys for Plaintiff
25  IMAGINE THAT INTERNATIONAL, INC.,
  dba ALL FOUR PAWS

-36-

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff IMAGINE THAT INTERNATIONAL, INC. hereby demands a trial by jury on this Complaint as to all issues that may be so tried.

Dated:  July 14, 2015

By      /s Jon E. Maki
                                    JON E. MAKI,

                              Attorneys for Plaintiff
                         IMAGINE THAT INTERNATIONAL, INC., a
                         California corporation dba ALL FOUR PAWS

-37-