REID DAMMANN (SBN: 249031)
GORDON & REES LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendants,
CS TECH US. dba ZenPet and ZenPetUSA.com,
CS TECH MEXICO, S.A. de C.V., CHAD GIBSON,
JEN BARRELLI, and HECTOR D. CAMPA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGINE THAT INTERNATIONAL, INC., a California corporation dba ALL FOUR PAWS,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CS TECH US. a Nevada corporation dba ZenPet and ZenPetUSA.com, CS TECH MEXICO, S.A. de C.V., a foreign corporation, CHAD GIBSON, an individual, JEN BARRELLI, an individual, HECTOR D. CAMPA, an individual, and DOES 1-10, inclusive,<br><br>                    Defendants. | CASE NO.  15CV1558 GPC KSC<br><br>**DEFENDANTS CS TECH US. dba ZENPET AND ZENPETUSA.COM, CS TECH MEXICO, S.A. DE C.V., CHAD GIBSON, JEN BARRELLI, AND HECTOR D. CAMPA OPENING CLAIM CONSTRUCTION BRIEF**<br><br>**PATENT LOCAL RULE 4.4(A)** |

        DEFENDANTS CS TECH US dba ZenPet and ZenPetUSA.com, CS TECH

MEXICO, S.A. de C.V., CHAD GIBSON, JEN BARRELLI, and HECTOR D.

CAMPA ("Defendants") hereby files and served this Opening Claim Construction

Brief, pursuant to Patent Local Rule 4.4(a), in response to the Complaint for Patent

Infringement and Demand for Jury Trial (the "Complaint") of Plaintiff  IMAGINE

THAT INTERNATIONAL, INC., dba ALL FOUR PAWS ("Plaintiff") and the

Infringement Contentions served by Plaintiff related to U.S. Patent No. 8,720,386

(the '386 Patent).

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-1-

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................ 2

II.   BACKGROUND ................................................................. 2

III.  LAW AND ARGUMENT ..................................................... 3

    1.    Legal Standard .......................................................... 3

    2.    When no Construction is Necessary, the Plain and Ordinary Meaning is Appropriate ............................................... 4

IV.   PROPOSED CONSTRUCTION FOR TEN TERMS .................... 6

    1.    Flexible Assembly ..................................................... 6

    2.    Arcuate .................................................................. 7

    3.    Stiffer than that of the Flexible Assembly .................... 8

    4.    Stay (noun) ............................................................ 9

    5.    Layered Assembly .................................................. 10

    6.    Flexible substantially non-resilient material .............. 12

    7.    Securing Together .................................................. 13

    8.    Closure effective to secure the first and second ends of the protective collar .......................................... 14

    9.    Closed Configuration .............................................. 16

    10.   Truncated Cone Shape ............................................ 17

V.    CONCLUSION ............................................................. 18

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1108624/27067761v.1

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                    15CV1558 GPC KSC

# TABLE OF AUTHORITIES

## Cases

*ACTV, Inc. v. Walt Disney Co.*
346 F.3d 1082 (Fed. Cir. 2003) ........................................................................ 3

*Apple, Inc. v. Samsung Electronics Co., Ltd.*
2012 U.S. Dist. LEXIS 48055, 2012 WL 1123752 (N.D. Cal. Apr. 4, 2012) ...... 5

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*
249 F.3d 1341 (Fed. Cir. 2001) ........................................................................ 5

*Every Penny Counts, Inc. v. Am. Ex. Co.*
563 F.3d 1378 (Fed. Cir. 2009) ........................................................................ 5

*Hill-Rom Servs., Inc. v. Stryker Corp.*
755 F.3d 1367 (Fed. Cir. 2014) ...................................................................... 16

*Hockerson-Halberstadt v. Avia Group Int'l*
222 F.3d 951 (Fed. Cir. 2000) .......................................................................... 5

*Hoechst Celanese Corp. v. BP Chems. Ltd.*
78 F.3d 1575 (Fed. Cir. 1996) ........................................................................ 11

*In re Am. Acad. of Sci. Tech. Ctr.*
367 F.3d 1359 (Fed. Cir. 2004) ........................................................................ 4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*
381 F.3d 1111 (Fed. Cir. 2004) ........................................................................ 3

*Interactive Gift Exp., Inc. v. Compuserve Inc.*
256 F.3d 1323 (Fed. Cir. 2001) ...................................................................... 12

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*
887 F.2d 1050 (Fed. Cir. 1989) ...................................................................... 12

*Mad Catz Interactive, Inc. v. Razer USA, Ltd.*
2015 U.S. Dist. LEXIS 83532, *2-3 (S.D. Cal. June 25, 2015) ........................... 4

*Markman v. Westview Instruments, Inc.*
52 F.3d 967 (Fed. Cir. 1995) ................................................................... 3, 4, 9

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*
75 F.3d 1545 (Fed. Cir. 1996) ........................................................................ 11

*Phillips v. AWH Corp.*
415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 3, 4, 15

*SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys.*, Inc.
242 F.3d 1337 (Fed. Cir. 2001) ...................................................................... 15

*Summit 6, LLC v. Samsung Elecs. Co.*
802 F.3d 1283 (Fed. Cir. 2015) ........................................................................ 5

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                    15CV1558 GPC KSC

*Vitronics Corp. v. Conceptronic, Inc.*
   90 F.3d 1576 (Fed. Cir. 1996) ........................................................................ 4

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*
   2015 U.S. Dist. LEXIS 46817, *28-29 (S.D. Cal. Feb. 3, 2015) ......................... 5

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

This is a case of a Plaintiff improperly attempting to redefine or add more language to straight forward claim language.  Plaintiff's definitions either (a) redefine claim terms that are easily understood and should be given their plain and ordinary meaning, or (b) create the perception of a dispute over the definitions by describing the claim terms with more words that are essentially identical to their plain and ordinary meaning.

## II.     BACKGROUND

Defendant CS TECH US provides premium quality health and wellness products to the pet community including recovery collars and cones.  In its Complaint, Plaintiff alleges that Defendants have infringed '494 patent, '386 patent or the design (ornamental shape) of the D'502 patents.  United States Patent No. 8,042,494 entitled "Pet Protective Collar" which was issued by the United States Patent and Trademark Office ("USPTO") on October 25, 2011 (the "'494 patent"), United States Patent No. 8,720,386 entitled "Pet Protective Collar with Stays" was issued by USPTO on May 13, 2014 (the "'386 patent"), and United States Patent No. D705,502,  entitled "Pet Protective Collar," was issued by USPTO on May 20, 2014 (the "D'502 patent").

Plaintiff only provided infringement contentions with respect to the '386 Patent.  Plaintiff did not provide infringement contentions for the '494 Patent.  As such, the '494 patent should be dismissed.

With respect to the '386 Patent, Plaintiff proposed several terms, which Plaintiff proposed narrowing to the following ten terms for purposes of claim construction:

1.  "flexible assembly"  (Claims 9, 10, & 17)

2.  "arcuate"  (Claims 9, 10, & 17)

3.  "stay"  (Claims 9, 10, & 17)

4.  "stiffer than that of the flexible assembly" (Claims 9, 10, & 17)

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-2-

5. "layered assembly" (Claim 17)

6. "flexible substantially non-resilient material" (Claim 17)

7. "securing together" (Claim 17)

8. "closure effective to secure the first and second ends of the protective collar" (Claim 17)

9. "closed configuration" (Claim 17)

10. "truncated cone shape" (Claim 17)

### III.   LAW AND ARGUMENT

### 1.   Legal Standard

Claim construction is a matter of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).  Claims are to be construed in a manner that "stays true to the claim language and most naturally aligns with the patent's description of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc). The Federal Circuit has set forth several guideposts for claim construction. *Id.*

To construe disputed terms, the Court first looks to the claims themselves. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).  Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").

Generally, claim language is given its "ordinary and customary meaning," defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13.  In cases where the "ordinary and customary meaning" is clear, claim construction

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                    15CV1558 GPC KSC

1    involves "little more than the application of the widely accepted meaning of

2    commonly understood words." *Id.* at 1314.

3         The USPTO determines the scope of claims in patent applications not solely

4    on the basis of the claim language, but upon giving claims their broadest

5    reasonable construction "in light of the specification as it would be interpreted by

6    one of ordinary skill in the art." *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359,

7    1364 (Fed. Cir. 2004).  The specification is also "'always highly relevant'" and

8    "'[u]sually [] dispositive; it is the single best guide to the meaning of a disputed

9    term.'"  *Id.* at 1315(quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

10   1582 (Fed. Cir. 1996)).  Where the inventor gives a term a special meaning, "the

11   inventor's lexicography governs." *Id.*at 1316.  Where the inventor specifically

12   disclaims a certain scope in the specification, that disclaimer is similarly

13   dispositive. *Id.*

14        The Court may also look to the patent's prosecution history, when it is

15   admitted into evidence, which includes the complete record of proceedings before

16   the USPTO, as well as cited prior art references.  *Id.* at 1317.  Finally, the Court

17   may consider extrinsic evidence such as "expert and inventor testimony,

18   dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980 (internal citations

19   omitted).  However, extrinsic evidence is "less significant than the intrinsic record"

20   and "less reliable than the patent and its prosecution history in determining how to

21   read claim terms." *Phillips*, 415 F.3d at 1317-18 (internal quotation marks and

22   citation omitted).

23        **2.      When no Construction is Necessary, the Plain and Ordinary**

24                  **Meaning is Appropriate**

25        The Court may construe disputed terms according to their plain and ordinary

26   meaning, so long as "disputes concerning [3]  the scope of the patent claims are

27   fully resolved." *Mad Catz Interactive, Inc. v. Razer USA, Ltd.*, 2015 U.S. Dist.

28   LEXIS 83532, *2-3 (S.D. Cal. June 25, 2015) (*citing Apple, Inc. v. Samsung*

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                15CV1558 GPC KSC

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1  *Electronics Co., Ltd.*, 2012 U.S. Dist. LEXIS 48055, 2012 WL 1123752 (N.D. Cal.

2  Apr. 4, 2012); *Every Penny Counts, Inc. v. Am. Ex. Co.*, 563 F.3d 1378, 1383 (Fed.

3  Cir. 2009).

4       It is not necessary to fabricate a new definition for every word in a patent

5  claim, particularly a "straightforward term" which requires no construction.  *See*

6  *e.g., Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015)

7  ("The district court rejected Samsung's argument that ongoing activity is

8  required—the heart of the parties' disagreement—and declined to further construe

9  the term because it was a 'straightforward term' that required no construction. . . .

10  Because the plain and ordinary meaning of the disputed claim language is clear,

11  the district court did not err by declining to construe the term.").  Instead, in

12  looking at the patent claims, terms can simply be provided their ordinary meaning

13  when the use does not indicate that it has meaning that would depart from its

14  ordinary meaning.  *See e.g., Biotec Biologische Naturverpackungen GmbH & Co.*

15  *KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (the Federal Circuit

16  found that the district court did not err in failing to construe the term "melting"

17  when "the meaning of 'melting' does not appear to have required 'construction,' or

18  to depart from its ordinary meaning").

19       Indeed, proper construction turns on the "ordinary and accustomed

20  meaning" of the claim term "as understood by one of ordinary skill in the art." *Zest*

21  *IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2015 U.S. Dist. LEXIS 46817, *28-

22  29 (S.D. Cal. Feb. 3, 2015) (citing see, e.g., *Hockerson-Halberstadt v. Avia Group*

23  *Int'l*, 222 F.3d 951, 955 (Fed. Cir. 2000) (citing cases)).

24       Here, Plaintiff has proffered no evidence that any of these ten terms' used in

25  the '386 patent departs from that term's respective plain and ordinary meaning.  As

26  such, all ten terms proposed by Plaintiff for construction should be provided their

27  plain and ordinary meaning, which is consistent with the term's respective use

28  throughout the patent claims and specification.

-5-

# IV.   PROPOSED CONSTRUCTION FOR TEN TERMS

## 1.   Flexible Assembly

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "Flexible Assembly" | An assembly or combination of materials or components such as sheets capable of bending easily. | Plain and ordinary meaning. |

This term "flexible assembly" is used in both Claims 9 and 17 of the '386 Patent.  Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning.  Plaintiff's definition essentially re-describes the words "flexible assembly" as an assembly that is flexible: "An assembly or combination of materials or components such as sheets capable of bending easily." Plaintiff's definition uses the words from the term itself to define the term (flexible assembly = "an assembly [ ]"), which calls to question the other words that Plaintiff tries to add to the definition ("or combination of materials or components such as sheets").

Plaintiff's definition of "flexible" as "capable of bending easily" is unnecessary and unsupported.  Plaintiff provides no support or evidence for why these definitions should be expanded to include this language.  Why does a two-word term which is easily understood be expanded to contain fifteen terms, particularly when those words would create disputes, such as the word "sheets" or the subjective word "easily" (in Plaintiff's proposed phrase "bending easily"). Plaintiff's proposed definition is unnecessary and does nothing but add more words to the definition.  Plaintiff has provided no basis for this definition or for why this commonly understood term would need a definition.  As such, the Court should simply apply the plain and ordinary meaning to this term.

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF          15CV1558 GPC KSC

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

The language shows this term as used in Claims 9 and 17 of the '386 Patent:

Claim 9:

a **flexible assembly** having an outer arcuate edge and an inner arcuate edge and a first end and a second end [12:50-51]

at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the **flexible assembly** [12:52-55]

Claim 17:

at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the **flexible assembly** [14:8-11]

**2.     Arcuate**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Arcuate" | Curved or arched. | Plain and ordinary meaning. |

The term "arcuate" is used in Claims 9, 10 and 17 of the '386 Patent. Like the previous claim term, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning. Plaintiff's definition essentially re-describes the word "arcuate" as either curved or arched, two words that also have the same meaning. Further, those words "curved" and "arched" appear nowhere in the '384 Patent's claims and specification. Again, such a definition is unnecessary and does nothing but add more words to the definition. Plaintiff has provided no basis for this definition or for why this commonly understood term would need a definition. As such, the Court should simply apply the plain and ordinary meaning to this term.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                    15CV1558 GPC KSC

### 3.   Stiffer than that of the Flexible Assembly

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Stiffer than that of the Flexible Assembly" | More rigid and difficult to bend than the flexible assembly for preventing the flexible assembly from folding. | Plain and ordinary meaning. |

The term "stiffer than that of the flexible assembly" is used in both Claims 9 and 17 of the '386 Patent. Like the previous terms (including "flexible assembly"), above, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning. Plaintiff's definition essentially re-describes the word "stiffer than that of the flexible assembly" as being "more rigid and difficult to bend than the flexible assembly for preventing the flexible assembly from folding." Again, such a definition is unnecessary and does nothing but add more words to the definition.

Further, when Plaintiff's proposed definition for this term is combined with Plaintiff's proposed definition of "flexible assembly," Plaintiff's proposed definition becomes even more unwieldly and unnecessary. Taken together, Plaintiff's proposed definition would expand the easily understood seven word term ("stiffer than that of the flexible assembly") to approximately <u>thirty</u> words: "More rigid and difficult to bend than the flexible assembly [an assembly or combination of materials or components such as sheets capable of bending easily] for preventing the flexible assembly from folding." Plaintiff has provided no basis for this definition or for why this commonly understood term would need a definition.

Below is the language from Claim 9 and Claim 17 of the '386 Patent related to this term:

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material **stiffer than that of the flexible assembly** [12:52-55, 14:8-11]

### 4. Stay (noun)

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Stay" | A stiffener. | Plain and ordinary meaning. |

The term "stay" is used as a noun in Claims 9, 10 and 17 of the '386 Patent. Like the previous claim terms, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning. Here, Plaintiff is improperly re-defining this word "stay" to mean "a stiffener." The word "stiffener" (noun) does not show up anywhere in the patent. Rather, such as in Claim 9, shown below, the stay in that particular claim is "formed of a material stiffer" than another material which is flexible ("the stay formed of a material stiffer than that of the flexible assembly").

With respect to the specification, while a "stay" may be described as "effective to stiffen the shape of the collar," or "have the effect of stiffening the overall shape of the collar and making it more difficult for the collar to be bent," the term "stay" is not defined anywhere in the claims or specifications as limited to – or equal to – a stiffener. Even the word "stiffener" is subjective, as it necessarily must be compared to something less stiff (i.e., something more flexible). "Claims must be read in view of the specification, of which they are a part. . . . For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims." *Markman v. Westview Instrs., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). As such, the Court should simply

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-9-

apply the plain and ordinary meaning to this term.

Below is the language showing how this term is used in Claims 9, 10, and 17 of the '386 Patent:

Claim 9:

> at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, **the stay** formed of a material stiffer than that of the flexible assembly
> a plurality of channels each containing **a stay** [[12:52-56]

Claim 10:

> at least one channel disposed along a radial stitching line, the channel being configured to house **the stay**. [12:66-67]

Claim 17:

> **at least one stay** connected to the assembly and extending in a direction between the inner and outer arcuate edges [14:8-10]
> **the stay** formed of a material stiffer than that of the flexible assembly [14:10-11]
> a plurality of channels each containing **a stay** [14:12]

**5.   Layered Assembly**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "Layered Assembly" | An assembly or combination of materials or components comprising more than one layer or sheet. | Plain and ordinary meaning. |

The term "Layered Assembly" is used in Claim 17 of the '386 Patent. Like the previous claim terms, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning. Like "flexible assembly," above, Plaintiff's definition adds more words (fifteen) to describe a two-word term which is easily understood.

Again, Plaintiff's definition uses the words from the term itself to define the term (layered assembly = "an assembly [ ] comprising more than one layer [ ]"),

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-10-

which calls to question the other words that Plaintiff tries to add to the definition ("or combination of materials or components" and "or sheet"). Plaintiff provides no support or evidence for why these definitions should be expanded to include this language.

Any support for "layered assembly" can be found in the only asserted claim with this term, Claim 17, which describes the "layered assembly" as comprising much more than simply a combination of undefined "materials or components." The language of Claim 17, is clear enough to define the components that the inventor chose to use to define the "layered assembly." Further, Plaintiff provides no reason for this Court to redefine in 15 words the 251 words[1] that the inventor used for what comprises a "layered assembly." *See e.g., Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996) ("[A] claim interpretation that would exclude the inventor's device is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support . . . ."); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("We share the district court's view that it is unlikely that an inventor would

---

[1] a first sheet comprising a flexible substantially non-resilient material having inner and outer arcuate edges extending between a first and second end of the first sheet, the inner and outer arcuate edges comprising circular arcs, wherein the outer arcuate edge has a substantially greater radius than the inner edge;

a second sheet comprising a flexible substantially non-resilient material and having a substantially similar shape to that of the first sheet;

wherein when assembled, the first and second sheets form the layered assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end;

at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly;

a plurality of channels each containing a stay, the channels at least partially extending between the inner arcuate edge and the outer arcuate edge of the assembly;

the first sheet and the second sheet formed into the assembly by securing together the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets;

a closure, effective to secure the first and second ends of the protective collar, such that when the first and second ends of the protective collar are secured a closed configuration is formed having an inner opening and an outer opening, the inner opening being smaller than the outer opening to provide a truncated cone shape.

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-11-

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                    15CV1558 GPC KSC

define the invention in a way that excluded the preferred embodiment, or that persons of skill in this field would read the specification in such a way."). "However, in looking to the specification to construe claim terms, care must be taken to avoid reading 'limitations appearing in the specification . . . into [the] claims.'" *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989)).

As such, the Court should simply apply the plain and ordinary meaning to this term.

Below is the language showing how this term is used in Claim 17:

> A protective collar effective as a veterinary restraint when fitted on an animal, the protective collar comprising:
> **a layered assembly comprising**: [see remainder of Claim 17 in footnote 1]: [13:19-21]
> wherein when assembled, the first and second sheets form the **layered assembly** having an outer arcuate edge and an inner arcuate edge and a first end and a second end [14:4-7]

### 6.   Flexible substantially non-resilient material

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Flexible substantially non-resilient material" | Material capable of bending easily and with little ability to rebound or spring back upon bending or deflection. | Plain and ordinary meaning. |

The term "flexible substantially non-resilient material" is used in Claim 17 of the '386 Patent. Like the previous claim terms, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning. This is one of the more concerning proposed definitions by Plaintiff because Plaintiff's proposed definition alters the meaning of the term, and Plaintiff has provided no

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1   support for such alteration.

2          Further, Plaintiff's proposal adds subjective words, such as "easily" and

3   "with little ability" as well as subjective comparisons relating to the four action

4   phrases Plaintiff proposes adding to the definition: (1) "rebound," (2) "spring

5   back," (3) "bending," and (4) "deflection." Of those four words Plaintiff proposes

6   the Court insert into this definition, three of them appear nowhere in the claims or

7   specification of the '386 Patent. The words "rebound," "spring" (or "spring

8   back"), and "deflect" (or "deflection") – or other variations of these descriptive

9   words – do not appear in the inventor's specification. The inventor did not choose

10  to use these words. Plaintiff has not provided support for these unnecessarily

11  complicated proposed definitions – and in this case, confusing subjective

12  comparisons. As such, the Court should define this commonly understood term

13  with its plain and ordinary meaning.

14          Below is the language showing how this term is used in Claim 17:

15          a first sheet comprising **a flexible substantially non-resilient**

16  **material** having inner and outer arcuate edges extending
    between a first end and a second end of the first sheet [13:22-25]

17          a second sheet comprising **a flexible substantially non-**

18  **resilient material** and having a substantially similar shape to that
    of the first sheet [14:1-3]

19

20  **7.     Securing Together**

21

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Securing together" | Attached or connected in a manner not likely to fail or give way. | Plain and ordinary meaning. |

26          The term "securing together" is used as a noun in Claims 9, 10 and 17 of the

27  '386 Patent. Like the previous claim term, Defendants contend that this term need

28  not be defined and can simply have its plain and ordinary meaning. Again, this

term needs no definition.

Also, Plaintiff's definition is inconsistent with the inventor's choice of words to describe other claims. For instance, Plaintiff's proposed definition for "securing" is "attached or connected," while the inventor chose to use the words "securing together" only in Claim 17 with respect to securing edges together – while the inventor chose to use the word "connected" in Claims 1, 9, and 17 to describe a stay connected to the assembly. Further, with respect to being attached or connected "in a manner not likely to fail or give way," Plaintiff has provided no support therefor and the language relating to failure or giving way. In fact, the words "fail" and "give way" do not appear in the claims or specification of the '386 Patent, except with respect to the resilience of a material being able to "give" ("cone shape it will be sufficiently rigid to maintain its cone configuration yet will easily **give** when hit or pushed or bent and resilient enough to recover its cone shape"), which does not support Plaintiff's proposed definition. As such, the plain and ordinary meaning of this term, "securing together," should be used.

Below is the language showing how this term is used in Claim 17:

> The first sheet and the second sheet are formed into the assembly by **securing together** the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets. [14:16-19]

## 8.    Closure effective to secure the first and second ends of the protective collar

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "Closure effective to secure the first and second ends of the protective collar" | Mechanism effective to reversibly fasten the ends of the protective collar. | Plain and ordinary meaning. |

The term "closure effective to secure the first and second ends of the

-14-

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

protective collar" is used in Claim 17 of the '386 Patent.  Once again, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning.

Here, Plaintiff proposed that the Court (1) redefine the claim term "closure" as "mechanism," and (2) redefine the claim term "effective to secure" as "effective to reversibly fasten."  The remainder of Plaintiff's proposed definition is essentially the same as the term (other than Plaintiff's proposal to move the words "first and second" to describe the "ends of the protective collar.")

First, Plaintiff's argument that "closure" should be defined as "mechanism" is unsupported by the language of the other claims of the '386 Patent.  The inventor chose, in other claims of the '386, to describe the means for closing as a "closure mechanism" (see dependent claims 4, 5, 12, 13).  Here, Plaintiff tries to equate a "closure" to a "mechanism" without any support in the claims or specification for why the inventor would describe a "closure" in certain claims (e.g., independent claim 1) and a "closure mechanism" in other claims dependent on that claim (e.g., claims 4 and 5, which are dependent on claim 1).  It appears Plaintiff is attempting to redefine the term in an effort to encourage the Court to commit the "cardinal sin" of claim construction by importing limitations from the written description into the claims. *See Phillips v. AWH Corp.*, 415 F.3d at 1320 (citing *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys.*, Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001).

Second, Plaintiff's proposal to insert "reversibly" into the definition is not supported by the claims or specification.  The word "reversible" or any variation of that word – appears nowhere in the claims or specification for the '386 Patent. The Federal Circuit has described reading a limitation from the written description into the claims as "one of the cardinal sins of patent law," *Phillips*, 415 F.3d at 1320, and expressly cautioned that claim language is not to be limited to a specific embodiment "unless the patentee has demonstrated a clear intention to limit the

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-15-

claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014). Thus, there is no basis for inserting a limitation of "reversible," even if an example of a closure is Velcro, which is reversible. As such, the Court should define this commonly understood term with its plain and ordinary meaning.

Below is the language showing how this term is used in Claim 17:

> **a closure, effective to secure the first and second ends of the protective collar**, such that when the first and second ends of the protective collar are secured, a closed configuration is formed having an inner opening and an outer opening. [14:19-23]

### 9.    Closed Configuration

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "Closed configuration" | Mechanism effective to reversibly fasten the ends of the protective collar. | Plain and ordinary meaning. |

The term "closed configuration" is used in Claim 17 of the '386 Patent. Again, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning. Plaintiff's proposed definition for this term "closed configuration," particularly with respect to redefining the terms as "mechanism" and "reversibly" fastening the ends both fail for the same reasons as in No. 8, above, relating to the term "closure [ ]." As such, the Court should define this commonly understood term with its plain and ordinary meaning.

Below is the language showing how this term is used in Claim 17:

> such that **when** the first and second ends of the protective collar are secured a **closed configuration** is formed having an inner opening and an outer opening [14:21-24]

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

### 10.   Truncated Cone Shape

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "Truncated Cone Shape" | The shape resulting when the ends are reversibly attached or fastened via a closure such that the inner opening is smaller than the outer opening. | Plain and ordinary meaning. |

The term "truncated cone shape" is used in Claim 17 of the '386 Patent. Like the previous claim terms, Defendants contend that this term need not be defined and can simply have its plain and ordinary meaning.

Again Plaintiff's proposed definition takes a commonly understood term "truncated cone shape" (three words) and creates a complicated and unsupported definition which changes the scope of the patent.  Further, the three-word claim term does not need <u>twenty-five</u> words to describe it:  "The shape resulting when the ends are reversibly attached or fastened via a closure such that the inner opening is smaller than the outer opening."  Plaintiff has provided no support for this proposed definition.  As such, the Court should define this commonly understood term with its plain and ordinary meaning.

Below is the language showing how this term is used in Claim 17:

> the inner opening being smaller than the outer opening to provide a **truncated cone shape**. [14:24-26]

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1

## V.    CONCLUSION

For the foregoing reasons, the Court should define each of these easily understood terms with their plain and ordinary meaning.

Dated:  March 4, 2016                    GORDON & REES LLP


By: /s/ Reid Dammann
          Reid Dammann
          Attorneys for Defendants

DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF                    15CV1558 GPC KSC

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

### CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon & Rees LLP 633 West Fifth Street, 52nd Floor, Los Angeles, CA  90071.  On **March 4, 2016**, I served the within documents:

**DEFENDANTS CS TECH US. dba ZENPET AND ZENPETUSA.COM, CS TECH MEXICO, S.A. DE C.V., CHAD GIBSON, JEN BARRELLI, AND HECTOR D. CAMPA OPENING CLAIM CONSTRUCTION BRIEF**

☒     **Electronically:**  I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") system and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.

Jon E. Maki                                         ☒  Registered participant of ECF
Law Office of Jon E. Maki
4135 Calle Isabelino
San Diego, CA  92130
Telephone:  (858) 876-2580
Facsimile:  (858) 876-1915
E-Mail:  jonmaki.esq@gmail.com
*Attorneys for Plaintiff*
*Imagine That International, Inc.*
*dba All Four Paws*

I declare that I am employed in the office of a member of the Bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **March 4, 2016** at Los Angeles, California.

Sandy Halvorsen

-1-

CERTIFICATE OF SERVICE                          CASE NO.  3:15-cv-01558-GPC-WVG