UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMAGINE THAT INTERNATIONAL, INC., a California corporation dba ALL FOUR PAWS,<br><br>Plaintiff,<br><br>v.<br><br>CS TECH US, a Nevada corporation dba ZenPet and ZenPetUSA.com, CS TECH MEXICO, S.A. de C.V., a foreign corporation, CHAD GIBSON, an individual, JEN BARRELLI, an individual, HECTOR D. CAMPA, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:  15-cv-1558-GPC-KSC<br><br>**ORDER CONSTRUING DISPUTED CLAIM TERMS OF U.S. PATENT NO. 8,720,386** |

In this patent infringement action, the parties seek construction of ten sets of claim terms found in U.S. Patent No. 8.720,386. This matter was heard on April 1, 2016. ECF No. 31. Having considered the moving papers and oral argument on the motion, the Court construes the terms as follows.

## BACKGROUND

Plaintiff Imagine That International, Inc., dba All Four Paws, ("Plaintiff") is the holder of two regular patents and one design patent on flexible pet protective collars: (1)

1

U.S. Patent No. 8,042,494 (the "'494 patent") titled "pet protective collar" which discloses a "custom fittable collar for an animal, useful to prevent the animal from contacting injured areas on the body, thus promoting healing of wounds"; (2) U.S. Patent No. 8,720,386 (the "'386 patent") titled "pet protective collar with stays" which discloses a "flexible pet protective collar having stays formed of a more rigid material than flexible sheets of the collar, the stays being disposed inside channels located at seams of the collar"; and (3) U.S. Design Patent No. 705,502 (the "D'502 patent") which discloses an "ornamental design for a pet protective collar." Compl. ¶ 15, ECF No. 1; Compl. Exs. 1–3, ECF No. 1-2. Plaintiff alleges that Defendants' CS Tech US, dba ZenPet and ZenPetAUSA.com ("CS Tech"), CS Tech Mexico S.A. de C.V. ("CS Tech Mexico"), Chad Gibson ("Chad Gibson"), Jen Barrelli ("Barrelli"), and Hector D. Campa ("Campa") (collectively, "Defendants") ProCone/ZenCone products infringe all three patents. Compl. ¶ 103.

The parties have submitted competing constructions for ten sets of claim terms found in the '386 patent. *See* Joint Hearing Statement, ECF No. 23; Pl. Brief, ECF No. 28; Def. Brief, ECF No. 27; Pl. Resp., ECF No. 30; Def. Resp., ECF No. 29.

## LEGAL STANDARD

Claim construction is a matter of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). Claims are to be construed in a manner that "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).

To construe disputed terms, the Court first looks to the claims themselves. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Generally, claim language is given its "ordinary and customary meaning," defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. In cases where the "ordinary and customary meaning" is clear, claim construction involves "little more than

the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

In cases where a term's meaning would not be apparent to a person of ordinary skill in the art at the time of the invention, the Court looks to other sources to construe the term. *Id.* When looking at sources other than claim language, the Court considers the context in which the term appears. *Id.* at 1313. The specification is also "'always highly relevant'" and "'[u]sually [] dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Where the inventor gives a term a special meaning, "the inventor's lexicography governs." *Id.* at 1316. Where the inventor specifically disclaims a certain scope in the specification, that disclaimer is similarly dispositive. *Id.*

The Court may also look to the patent's prosecution history, when it is admitted into evidence, which includes of the complete record of proceedings before the USPTO, as well as cited prior art references. *Id.* at 1317. Finally, the Court may consider extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980 (internal citations omitted). However, extrinsic evidence is "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1317–18 (internal quotation marks and citation omitted).

Finally, "terms do not need to be construed [where] they are neither unfamiliar to the jury, confusing to the jury, nor affected by the specification or prosecution history." *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 528 F. Supp. 2d 967, 976 (N.D. Cal. 2007) (citing *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.")).

//

# DISCUSSION

The '386 patent, entitled "pet protective collar with stays," discloses a "flexible pet protective collar having stays formed of a more rigid material than flexible sheets of the collar, the stays being disposed inside channels located at seams of the collar." '386 Patent Abstract, Compl. Ex. 2. The application for the '386 patent was filed on June 18, 2012, and the patent was issued on May 13, 2014. The parties dispute ten terms in the '386 patent. In each case, Plaintiff offers a proposed construction, whereas Defendants contend that the terms should be given their plain and ordinary meaning. *See* Joint Hearing Statement 1–2. The disputed terms are as follows:

1. "flexible assembly" (Claims 9 & 17)

2. "arcuate" (Claims 9, 10, & 17)

3. "stay" (Claims 9, 10, & 17)

4. "stiffer than that of the flexible assembly" (Claims 9 & 17)

5. "layered assembly" (Claim 17)

6. "flexible substantially non-resilient material" (Claim 17)

7. "securing together" (Claim 17)

8. "closure effective to secure the first and second ends of the protective collar" (Claim 17)

9. "closed configuration" (Claim 17)

10. "truncated cone shape" (Claim 17)

The court will examine each claim term in turn.

**1. "flexible assembly"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| An assembly or combination of materials or components such as sheets capable of bending easily. | Plain and ordinary meaning. |

The term "flexible assembly" appears in claims 9 and 17 of the '386 patent.

//

//

### a. Claim Language

The claims themselves do not define the term "flexible assembly" as a whole. Claim 9 describes "a flexible assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end," '386 Patent 12:50–51, with "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly," *id.* at 12:52–55. Claim 17 describes a "layered assembly" with "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly." *Id.* at 14:8–11.

### b. Specification

The abstract describes the invention as "[a] flexible pet protective collar having stays formed of a more rigid material than flexible sheets of the collar . . . ." '386 Patent Abstract. The specification provides as one preferred embodiment a protective collar that "comprises a first exterior sheet 10 comprising a flexible material . . . [with a] second exterior sheet 20 also compris[ing] a flexible material." *Id.* at 6:29–35. It goes on to state that in this preferred embodiment, "[i]t is preferred that the first and second exterior sheets 10 and 20 be quite flexible with little resilience and resistance to bending, while the padding layer [in-between] be more resilient such that when they are formed into a unit and applied to an animal in a cone shape it will be sufficiently rigid to maintain its cone configuration yet will easily give when hit or pushed or bent and resilient enough to recover its cone shape." *Id.* at 7:2–10.

### c. Prosecution History

Plaintiff argues that the term "flexible" requires construction because during the patent examination, the Patent Examiner rejected claims 1–9, 19, and 20 for indefiniteness, stating that "[i]t is confusing and seems contradictory as to how the sheets can be both 'flexible' and 'non-resilient' when flexibility necessarily means something is resilient." Pl. Br., Ex. C, AFP000353. The patentee traversed the rejection, explaining that "[t]he sheet is flexible so it is able to fold without breaking, however it is non-resilient which means it

cannot spring back if it stretched. These terms are not necessarily inconsistent." *Id.* at AFP000348.

The Court declines to construe the specific term "flexible." The term "flexible" appears to be used in accordance with its plain and ordinary meaning in the specification. *See Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) (declining to construe the term "melting" when the term did not appear to depart from its ordinary meaning). While one preferred embodiment mentions "little . . . resistance to bending" as an aspect of the exterior sheets, in general the specification does not support Plaintiff's proposed addition of the attribute of "bending easily" to the term "flexible assembly." To the extent that there was confusion in the prosecution history, it appears to be related to the use of the specialized use of the term "non-resilient" in the specification, a term the Court construes below.

**d. Extrinsic Evidence**

Defendants argue that Plaintiff's proposed construction of "assembly" is redundant because it includes the word "assembly" within it. The term is not defined within the claim language or the specification. Thus, the Court turns to extrinsic evidence for guidance. "Assembly" is a commonly construed term. The Federal Circuit has interpreted assembly to mean "a collection of parts so assembled as to form a . . . structure . . . ." *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1427 (Fed. Cir. 1997).

Accordingly, the Court finds that it is only necessary to construe "assembly" in the term "flexible assembly." The Court construes the term "flexible assembly" to mean "a flexible collection of parts so assembled as to form a structure."

**2. "arcuate"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Curved or arched. | Plain and ordinary meaning. |

The term "arcuate" appears in claims 9, 10, and 17 of the '386 patent.

///

///

### a. Claim Language

The claims themselves suggest that the term "arcuate" is associated with the concept of "circular arcs."

Claim 9 describes "a flexible assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end" with "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges" and "a plurality of channels each containing a stay, the channels at least partially extending between the inner arcuate edge and the outer arcuate edge of the assembly." '386 Patent 12:50–58. Claim 10 describes "a plurality of radial stitching lines at least partially extending between the inner arcuate edge and the outer arcuate edge of the assembly." *Id.* at 12:60–62. Claim 17 describes "a first sheet comprising a flexible substantially non-resilient material having inner and outer arcuate edges extending between a first and second end of the first sheet, the inner and outer arcuate edges comprising circular arcs, wherein the outer arcuate edge has a substantially greater radius than the inner edge . . . wherein when assembled, the first and second sheets form the layered assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end; at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges . . . the channels at least partially extending between the inner arcuate edge and the outer arcuate edge of the assembly; the first sheet and the second sheet formed into the assembly by securing together the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets." *Id.* at 13:22–14:19.

### b. Specification

Plaintiff argues that the specification's description of the "inner and outer arcuate edges comprising singular circular arcs," *id.* at 2:56–57, as well as the diagrams support Plaintiff's proposed construction of "curved or arched."

///

///

///

### c. Extrinsic Evidence

Webster's Third International Dictionary defines "arcuate" as "curved like a bow." Similarly, the American Heritage Dictionary, Fifth Edition, defines "arcuate" as "[h]aving the form of a bow; curved." The intrinsic and extrinsic evidence support construing "arcuate" to have its plain and ordinary meaning: "curved."

### 3. "stay"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A stiffener. | Plain and ordinary meaning. |

The term "stay" appears in claims 9, 10, and 17 of the '386 patent.

### a. Claim Language

The claims themselves do not define the term "stay." However, the claims themselves suggest that the "stays" described have certain concrete qualities. Namely, Claim 9 describes "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly," as well as "a plurality of channels each containing a stay." *Id.* at 12:52–56. Claim 10 describes "at least one channel disposed along a radial stitching line, the channel being configured to house the stay." *Id.* at 12:66–67. Claim 17 describes "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly; a plurality of channels each containing a stay." *Id.* at 14:8–12.

### b. Specification

The specification describes as a preferred embodiment "[t]he stays 150 . . . are more rigid than the material of the collar 10, are preferably somewhat bendable. For example, the material of the collar 10 may be made of nylon and the stays 150 may be made of bendable plastic. The stays, when connected to the collar have the effect of stiffening the overall shape of the collar and making it more difficult for the collar to be bent. Optionally, the stays are removable." *Id.* at 10:4–11. Contrasting the invention with prior art, the specification explains that other soft collars "could conceivably be bent backwards from

the head, [making it] possible for an animal to paw at injuries in the head area," whereas in the "pet protective collar with stays" the "stay is effective to stiffen the overall shape of the collar." *Id.* at 2:41–43; 3:1–2.

### c. Extrinsic Evidence

Webster's Third International Dictionary provides as one definition of "stay" "a thin film strip (as of plastic) used for stiffening a garment or part (as a shirt collar). Similarly, the American Heritage Dictionary, Fifth Edition, provides as one definition of "stay" "[a] strip of bone, plastic, or metal, used to stiffen a garment or part, such as a corset or shirt collar.

Plaintiff argues that the Court should construe the term "stay" because there are other common understandings of the word, such as its use as a verb. However, the Court finds that it is plain that the word "stay" is used as a noun and not a verb in the claim. In addition, the specific use of the word "stay" is defined by the surrounding claim language that describes the characteristics of the stays as used in the collar. Accordingly, the Court construes "stay" to have its plain and ordinary meaning.

### 4. "stiffer than that of the flexible assembly"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| More rigid and difficult to bend than the flexible assembly for preventing the flexible assembly from folding. | Plain and ordinary meaning. |

The term "stiffer than that of the flexible assembly" appears in claims 9 and 17 of the '386 patent.

### a. Claim Language

Claim 9 describes "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly." *Id.* at 12:52–55. Claim 17 describes "at least one stay connected to the assembly and extending in a direction between the inner and outer arcuate edges, the stay formed of a material stiffer than that of the flexible assembly."

The Court finds that no construction is necessary because the claim language has a plain and ordinary meaning. *See, e.g.*, *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (where "the plain and ordinary meaning of the disputed claim language is clear," no construction is required).

**5. "layered assembly"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| An assembly or combination of materials or components comprising more than one layer or sheet. | Plain and ordinary meaning. |

The term "layered assembly" appears in claim 17 of the '386 patent.

### a. Claim Language

Claim 17 describes "[a] protective collar effective as a veterinary restraint when fitted on an animal, the protective collar comprising: a layered assembly," *id.* at 13:19–21, "wherein when assembled, the first and second sheets form the layered assembly having an outer arcuate edge and an inner arcuate edge and a first end and a second end," *id.* at 14:4–7.

The Court finds that no construction of the specific word "layered" is necessary because the word has its plain and ordinary meaning. In conjunction with the construction of "assembly" adopted above, the Court construes "layered assembly" to mean "a layered collection of parts so assembled as to form a structure."

**6. "flexible substantially non-resilient material"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Material capable of bending easily and with little ability to rebound or spring back upon bending or deflection. | Plain and ordinary meaning. |

The term "flexible substantially non-resilient material" appears in claim 17 of the '386 patent.

///

///

///

### a. Claim Language

Claim 17 describes "a first sheet comprising a flexible substantially non-resilient material having inner and outer arcuate edges extending between a first end and a second end of the first sheet." *Id.* at 13:22–25.

### b. Specification

The specification provides as one preferred embodiment a protective collar that "comprises a first exterior sheet 10 comprising a flexible material . . . [with a] second exterior sheet 20 also compris[ing] a flexible material." *Id.* at 6:29–35. It goes on to state that in this preferred embodiment, "[i]t is preferred that the first and second exterior sheets 10 and 20 be quite flexible with little resilience and resistance to bending, while the padding layer [in-between] be more resilient such that when they are formed into a unit and applied to an animal in a cone shape it will be sufficiently rigid to maintain its cone configuration yet will easily give when hit or pushed or bent and resilient enough to recover its cone shape." *Id.* at 7:2–10.

### c. Prosecution History

Plaintiff argues that the term "non-resilient" requires construction because during the patent examination, the Patent Examiner rejected claims 1–9, 19, and 20 for indefiniteness, stating that "[i]t is confusing and seems contradictory as to how the sheets can be both 'flexible' and 'non-resilient' when flexibility necessarily means something is resilient." Pl. Br., Ex. C, AFP000353. The patentee traversed the rejection, explaining that "[t]he sheet is flexible so it is able to fold without breaking, however it is non-resilient which means it cannot spring back if it stretched. These terms are not necessarily inconsistent." *Id.* at AFP000348.

As discussed above, the Court finds that the term "flexible" has a plain and ordinary meaning. The Court also finds that the term "material" has a plain and ordinary meaning. The meaning of the term "substantially" is highly dependent on intrinsic evidence. *See, e.g.*, *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1322 (Fed. Cir. 2003) (construing the term "substantially in an imaginary plane."); *Epcon*

*Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022 (Fed. Cir. 2002) (construing the terms "substantially constant" and "substantially below"); *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408 (Fed. Cir. 2000) (construing the term "substantially inward"); *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568 (Fed. Cir. 1996) (construing the term "substantially the entire height thereof"); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558 (Fed. Cir. 1996) (construing the term "substantially in the common plane"). However, past courts have characterized the term as often "connoting a term of approximation." *See Epcon*, 279 F.3d at 1031; *see also Deering*, 347 F.3d at 1323 (recognizing as dictionary definitions of substantially "significantly," "considerably," "largely," and "essentially"). Examining the specification, the Court finds that "substantially" appears to be used in this sense here. The Court thus construes the term "substantially" to mean "largely." Finally, in accordance with the specification and the prosecution history, the Court finds that the term "non-resilient" has a special meaning of "not able to spring back when bent or folded."

Thus, the Court construes the term "flexible substantially non-resilient material" to mean "flexible material largely not able to spring back when bent or folded."

**7. "securing together"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Attached or connected in a manner not likely to fail or give way. | Plain and ordinary meaning. |

The term "securing together" appears in claim 17 of the '386 patent.

### a. Claim Language

Claim 17 describes "[t]he first sheet and the second sheet are formed into the assembly by securing together the outer arcuate edges and the inner arcuate edges and the first and second ends of the first and second sheets." '386 Patent 14:16–19.

### b. Specification

The specification provides as one preferred embodiment that "[t]he first exterior sheet 10 and the second exterior sheet 20 are joined along their peripheries 12 and 14 by

sewing. . . . [U]sing separate exterior sheets 10 and 20, they are sewn together along the inner arcuate edge 12 and the outer arcuate edge 14 using conventional hem sewing techniques." *Id.* at 7:18–23.

Plaintiff argues that their proposed construction should be adopted to distinguish the use of "securing together" from "closure effective to secure the first and second ends of the protective collar, such [as to form] a closed configuration" in Claim 17. However, the Court finds that no construction is necessary because the claim language has a plain and ordinary meaning. As discussed below, this specific use of the word "securing" is differentiated from the use of the word "secure" in the context of the "closure" of the protective collar by the surrounding claim language that describes that latter closure as forming one of the possible "configuration[s]" of said collar.

**8. "closure effective to secure the first and second ends of the protective collar"**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Mechanism effective to reversibly fasten the ends of the protective collar | Plain and ordinary meaning. |

The term "closure effective to secure the first and second ends of the protective collar" appears in claim 17 of the '386 patent.

### a. Claim Language

Claim 17 describes "a closure, effective to secure the first and second ends of the protective collar, such that when the first and second ends of the protective collar are secured, a closed configuration is formed having an inner opening and an outer opening." '386 Patent 14:19–23.

### b. Specification

The specification provides "[v]arious means of closure [as] suitable for use in the invention," including "hook and loop fastener strips such as Velcro products" which would "conveniently secure the ends of the collar to form the desired cone shape." *Id.* at 7:54–57.

Plaintiff argues that the specification bolsters Plaintiff's proposed construction that the term necessarily includes the idea that the closure is "reversible." However, the Court

finds that no construction is necessary because the claim language has a plain and ordinary meaning. Moreover, Plaintiff's proposed construction risks limiting the patent to its preferred embodiments. *See Phillips*, 415 F.3d at 1323 (citations omitted).

As Plaintiff acknowledges, the inclusion in the claim language of the concept that the closure results in a "closed configuration" necessarily implies that the cone can also have an "open configuration." Thus, the Court declines to adopt Plaintiff's proposed construction.

### 9. "closed configuration"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The form of the protective collar resulting when the ends reversibly attached or fastened via a closure. | Plain and ordinary meaning. |

The term "closed configuration" appears in claim 17 of the '386 patent.

#### a. Claim Language

Claim 17 describes "a closure, effective to secure the first and second ends of the protective collar, such that when the first and second ends of the protective collar are secured, a closed configuration is formed having an inner opening and an outer opening." *Id.* at 14:19–23.

The Court finds that the term "closed configuration" has a plain and ordinary meaning. Moreover, as discussed above, the Court finds that the plain and ordinary meaning of the term "closed configuration" is supported by the surrounding claim language that describes the characteristics of the collar.

### 10. "truncated cone shape"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The shape resulting when the ends are reversibly attached or fastened via a closure such that the inner opening is smaller than the outer opening. | Plain and ordinary meaning. |

The term "truncated cone shape" appears in claim 17 of the '386 patent.

///

      **a. Claim Language**

Claim 17 describes "the inner opening being smaller than the outer opening to provide a truncated cone shape." *Id.* at 14:24–26.

      **b. Specification**

The specification describes as a preferred embodiment "[t]he invention further comprises a means of closure, effective to secure the ends of the protective collar, such that when the ends of the protective collar are secured, the collar forms a truncated cone shape with an inner opening 30 and an outer opening 32 as show in FIG. 3." *Id.* at 7:50–54.

The Court finds that the use of the term "truncated cone shape" in the claim does not deviate from the plain and ordinary meaning of the term. Plaintiff's proposed construction is imprecise and introduces a "reversibly attached" element to the claim that is not found in the specifications or prosecution history. Accordingly, the Court declines to construe this term.

# CONCLUSION

For the reasons stated above, the terms at issue shall be construed as indicated above.

**IT IS SO ORDERED.**

Dated: April 4, 2016

Hon. Gonzalo P. Curiel
United States District Judge